IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DALE SCOTT HEINEMAN AND KURT F. JOHNSON, d/b/a THE DOREAN GROUP, THE OXFORD TRUST and UNIVERSAL TRUST,<br><br>Defendants. | No. C 05-02730 WHA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

Individual pro se defendants Dale Scott Heineman and Kurt F. Johnson were founders and principals of the Dorean Group. They also operated the Oxford Trust and Universal Trust within the Dorean Group. Heineman and Johnson were charged with and convicted of conspiracy and multiple counts of mail fraud, stemming from a fraudulent debt-elimination scheme. The United States now requests that summary judgment be entered in its favor on the following grounds: (i) that defendants engaged in a fraudulent mortgage elimination scheme; (ii) that defendants applied this scheme to dozens of properties nationwide, thereby defrauding financial institutions, lenders, and/or homeowners; and (iii) defendants violated the criminal mail fraud statute, 18 U.S.C. 1341. The government also requests an order enjoining defendants from further engaging in activities related to the fraud. For the reasons stated below, the motion for summary judgment and to enjoin defendants is **GRANTED**.

**STATEMENT**

The following facts have been established through the previous criminal conviction in *United States vs. Kurt F. Johnson and Dale Scott Heineman*, CR 05-0611 WHA (Dkt. No. 566). Through its unincorporated and unlicensed entity the Dorean Group, defendants Dale Scott Heineman and Kurt F. Johnson ran a "debt-elimination" program from 2004 to 2005. They used brokers and the Internet to advertise to prospective clients that they could eliminate debt on the borrowers' homes and earn profit in the process. Clients were homeowner borrowers with loans from lenders and secured by their home properties. These clients paid a one- to three-thousand dollar fee to the Dorean Group in order to be a part of the debt-elimination program.

Once the client borrowers had signed on, their properties were placed into "family trusts," of which defendants were the trustees. Defendants would then mail "presentment packets" to lenders. These packets demanded that lenders prove the validity of the loan within ten days "to the unilateral satisfaction of the Dorean Group," or else defendants would automatically become trustees for the lender. If lenders ignored or rejected the packets, defendants would file a "Substitution of Trustee" form at the county recorder's office (without giving notice to lenders). Now purporting to be agents for the lender, defendants would file a full reconveyance of the property to the family trust. Defendants then claimed to the clients that the loan had been paid in full and lenders had no more interest in the property.

As a result, client borrowers believed that their debt had been successfully eliminated. Many of them stopped making mortgage payments. Of course, unaware of what defendants had done, lenders sent notices of default. Some clients caved and resumed their mortgage payments while others continued with the "Dorean Process." These other clients did not make mortgage payments and eventually lost their homes in foreclosure. So both lenders and client borrowers ended up being the victims of defendants' debt-elimination scheme.

In certain situations, defendants were even able to convince their clients to obtain a new loan from a different lender, securing it with the supposedly free-and-clear properties. Defendants then gave twenty-five percent of the loan proceeds to their clients and kept the rest.

The profits of this fraudulent venture, which was estimated to be in the millions of dollars, were wired to a bank in Latvia. This money has not yet been recovered.

In early September 2004, Heineman and Johnson first appeared in this district as plaintiffs in a civil action, *The Frances Kenny Family Trust v. World Savings Bank FSB*, C 04-03724 WHA. Frances Kenny was a client borrower who faced foreclosure by lender World Savings Bank. (By then, there were other related foreclosures in the works.) Defendants filed suit as a phony show for clients, indicating to clients that defendants were litigating on the clients' behalf. The complaint, submitted by Attorney Thomas Spielbauer, was incomprehensible and nonsensical, however. Counsel for World Savings Bank brought to the Court's attention the fraudulent nature of the Dorean Process.

In November 2004, more cases with similar civil complaints from defendants and Attorney Spielbauer were related to *Frances Kenny*. The *Frances Kenny* complaint was ultimately dismissed with prejudice and Attorney Spielbauer was ordered to show cause why he should not be sanctioned for filing a fraudulent pleading. Attorney Spielbauer was eventually sanctioned and ordered to pay ten thousand dollars and referred to the state bar. The matter was then referred to the United States Attorney's Office, without any recommendation as to how it should be resolved. The FBI, however, had already been investigating defendants' scheme.

In July 2005, the government filed the instant action against defendants, seeking injunctive relief pursuant to 18 U.S.C. 1345. It requested that defendants and all persons working with them be permanently enjoined from violating the criminal mail fraud (18 U.S.C. 1341), wire fraud (18 U.S.C. 1343) and bank fraud statutes (18 U.S.C. 1344). The government's applications for a temporary restraining order and preliminary injunction were granted. Since then, the preliminary injunction has been modified dozens of times to reconvey the properties back to Dorean Group client borrowers.

A few months later, in September 2005, a grand jury indicted defendants, who were already in state custody in Salt Lake County, Utah, on related charges. The government filed a superseding federal indictment in February 2006, charging defendants with one count of conspiracy in violation of 18 U.S.C. 1349, thirty-six counts of mail fraud in violation of

18 U.S.C. 1341, twenty-six counts of bank fraud in violation of 18 U.S.C. 1344, two counts of criminal contempt in violation of 18 U.S.C. 401(3), and three counts of forfeiture in violation of 18 U.S.C. 981(a)(1)(C) and 28 U.S.C. 2461.  Heineman and Johnson were transferred to this district.  The government eventually dropped the bank fraud counts, two of the mail fraud counts, and contempt counts.  In addition, the forfeiture counts were severed for a subsequent trial.

Trial began in October 2007 and lasted over a month.  A jury found Heineman and Johnson guilty on all counts.  Heineman was sentenced to 260 months in prison while Johnson received 300 months.  They were also ordered to pay restitution and to forfeit funds seized from their bank accounts.  In January 2008, defendants' motion for judgment of acquittal was denied.  Throughout the proceedings, Heineman and Johnson refused appointment of counsel, despite being advised by the Court on numerous occasions to do so.

The government now moves for summary judgment in the civil action.  Specifically, it requests that an order be issued determining that: (i) the defendants engaged in a fraudulent debt-elimination scheme in which, after collecting a fee from the homeowner, they filed bogus documents with the county recorder's office that made the property appear unencumbered (even though it was not); (ii) the defendants applied this scheme to dozens of properties across the nation, thereby defrauding financial institutions, lenders, and/or homeowners; and (iii) the defendants violated the criminal mail statute, 18 U.S.C. 1341.  In addition, the government requests that there be an order enjoining Heineman and Johnson from engaging in activities related to their fraudulent scheme.

Defendants have not filed an opposition.  Pursuant to Civil Local Rule 7-3, the opposition was originally due on July 17, 2008.  Given that defendants were incarcerated and representing themselves, they were given an additional two weeks to file a response to the government's motion.  That same order vacated the hearing and stated that "[i]f [Heineman and Johnson] do not oppose the motion, the motion will be deemed unopposed" (Dkt. No. 362).  The second deadline, July 31, came and went.  Nonetheless, the Court granted one last

4

1 extension, until August 18. As no opposition was ever forthcoming, plaintiff's motion remains
2 uncontested. This order will still evaluate the merits, however.

## ANALYSIS

Summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(c). A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).[1]

The moving party "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F. 3d 1099, 1102 ( 9th Cir. 2000). When the moving party meets its initial burden, the burden then shifts to the party opposing judgment to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U. S. 317, 324 (1986).

The government contends that collateral estoppel applies, thereby establishing defendants' liability that they engaged in mail fraud. "By definition, the doctrine of collateral estoppel prevents relitigation by the parties of issues actually litigated and necessarily decided in a prior action. Collateral estoppel is applied only when the issues in the subsequent action are identical to those of the first action." *United States v. Real Property Located at Section 18, Township*, 976 F.2d 515, 517 (9th Cir. 1992). The Ninth Circuit requires that the following requirements be satisfied before collateral estoppel can be applied:

---

[1] Unless indicated otherwise, internal citations are omitted from all quoted authorities in this order.

5

> The criteria for the application of collateral estoppel are: (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial.

*Ibid*. In the instant action, this order holds that collateral estoppel applies, especially given that the same claims were proven beyond a reasonable doubt in the criminal action.

With respect to the first requirement, it is undisputed that the prior conviction was for a serious offense so that Heineman and Johnson were motivated to fully litigate the charges. They were charged with one count of conspiracy, thirty-six counts of mail fraud, twenty-six counts of bank fraud, two counts of criminal contempt, and three counts of forfeiture. Even when the government dropped the bank fraud, contempt and forfeiture counts, Heineman and Johnson were still convicted and eventually sentenced to 260 and 300 months in prison, respectively.

The second requirement in *Real Property* is also met. Before, during, and after trial, the Court repeatedly asked and advised defendants to obtain counsel, even offering to stay proceedings (mid-trial) until they were able to do so. The Court also ordered the marshals to provide each defendant with two sets of civilian clothing to wear during the trial. Defendants nonetheless refused and insisted on wearing their prison garb. Within reason, the Court ensured that witnesses and subpoenaed documents were made available to Heineman and Johnson. Defendants had at least two charging conferences where they made few objections to the proposed jury instructions. After a month-long jury trial, defendants were convicted of conspiracy and over thirty counts of mail fraud. Following the verdict, the Court again asked defendants if they wanted appointment of counsel for post-trial proceedings. And again, defendants refused. There is no question that defendants were rightfully convicted following a full and fair trial.

The third prong of the *Real Property* test is that the issue in the instant civil action had to have been actually litigated and necessarily decided in the prior criminal conviction. This too

6

was met. Here, the government seeks injunctive relief pursuant to 18 U.S.C. 1345(a), which provides:

> (1) If a person is —
>     (A) violating or about to violate this chapter [mail or wire fraud] or section 287 [false claims], 371 [conspiracy] (insofar as such violation involves a conspiracy to defraud the United States or any agency thereof), or 1001 of this title [fraud and false statements];
>     (B) committing or about to commit a banking law violation (as defined in section 3322(d) of this title); or
>     (C) committing or about to commit a Federal health care offense;
> the Attorney General may commence a civil action in any Federal court to enjoin such violation.
>
>         \*      \*      \*
>
> (3) A permanent or temporary injunction or restraining order shall be granted without bond.

In its motion for summary judgment, the government asserts collateral estoppel on the issue of defendants' violation of the criminal mail statute, 18 U.S.C. 1341. It wants an order finding that defendants engaged in a debt-elimination scheme, that they worked this scheme on dozens of properties (and therefore defrauded financial institutions, lenders, and/or homeowners), and that defendants violated 18 U.S.C. 1341.

    In the civil context, the government must show by a preponderance of the evidence that defendants engaged in mail fraud. Specifically, to allege a violation of mail fraud under 18 U.S.C. 1341, the government must show that: (i) the defendants formed a scheme or artifice to defraud; (ii) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (iii) the defendants did so with the specific intent to deceive or defraud. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004). Here, the government succeeded in doing so; it proved beyond a reasonable doubt that defendants perpetrated their debt-elimination fraud on numerous financial institutions, lenders, and/or homeowners, thereby violating Section 1341. A jury found them guilty beyond a reasonable doubt of thirty-four counts of mail fraud. This exceeded the preponderance-of-the-evidence standard required in a civil action.

    Finally, the party against whom the collateral estoppel is asserted must be a party in the prior trial. Here, the parties in the civil and criminal actions are identical; the government is the

7

plaintiff and Heineman and Johnson are defendants in both actions. Accordingly, collateral estoppel applies and the conviction is given preclusive effect in the civil matter. Pursuant to 18 U.S.C.1345, because defendants were found to have violated the mail fraud statute, they are permanently enjoined from engaging in activities related to their fraudulent scheme.

## CONCLUSION

For the foregoing reasons, the government's motion for summary judgment is **GRANTED**. Furthermore, defendants are **ENJOINED** from engaging in activities related to their debt-elimination scheme, namely: (i) advertising their "services" via any form of wire communication or by mail; (ii) soliciting or receiving fees from any individual or entity; (iii) creating any trusts or entering into any trust agreements; (iv) delivering, sending, mailing, or wiring lenders any "presentment packets," any documents purporting to appoint defendants as the lender's agent or attorney-in-fact, or any documents that demand that the lender acquiesce to the scheme; (v) filing or recording any documents with any county clerk, county recorder's office, or register of deeds; (vi) receiving proceeds from refinanced loans and/or sale of properties to which defendants have applied their debt-elimination scheme; and (vii) offering, providing, and/or sharing advice related in any way to their debt-elimination scheme.

**IT IS SO ORDERED.**

Dated: August 19, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8